IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDEMNITY INSURANCE COMPANY : <br> OF NORTH AMERICA : <br> *a/s/o* UNIONVILLE-CHADDS FORD : <br> SCHOOL DISTRICT : <br> : | CIVIL ACTION |
| v.   : <br> : | NO. 10-4113 |
| : <br> ELECTROLUX HOME PRODUCTS, : <br> INC. : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                     **DECEMBER __7__, 2011**

Presently before the Court is Defendant Electrolux Home Products, Inc.'s Motion for Summary Judgment. (Def.'s Mot. Summ. J., ECF No. 17.) For the following reasons, the Motion will be granted in part and denied in part.

**I.   BACKGROUND**

      **A.**    **Procedural History**

The Unionville-Chadds Ford School District ("School District"), which operates Unionville High School ("High School"), filed an insurance claim with Plaintiff, the Indemnity Insurance Company of North America, to recoup the costs of repair and restoration incurred as a result of a fire. Those costs are approximately $770,000. (Compl. ¶¶ 11, 12.) Plaintiff, as subrogee of the School District, seeks to recover this amount from Defendant on theories of strict product liability and breach of warranty.

On August 16, 2010, Plaintiff filed a Complaint against Defendant alleging negligence, strict liability, and breach of express and implied warranties. (ECF No. 1.)[1] Defendant filed an Answer, denying liability under all of Plaintiff's theories. (ECF No. 4.) On October 4, 2011, Defendant filed the instant Motion for Summary Judgment on all counts, and in the alternative, for a spoliation inference against Plaintiff for failure to preserve evidence. Defendant contends that summary judgment should be granted on Plaintiffs strict liability claim and its breach of warranty claims because Plaintiff has failed to present a *prima facie* case based upon the malfunction theory of product liability. Defendant argues that Plaintiff has failed to present evidence, either direct or circumstantial, that Defendant's product, a compact Frigidaire refrigerator, was defective when it left the Defendant's control. Defendant also argues that summary judgment is an appropriate sanction for Plaintiff's spoliation of evidence. On October 31, 2011, Plaintiff filed its response. (ECF No. 18.) Argument was held on December 2, 2011.

**B.     Factual Background**

This lawsuit was filed as a result of the fire that occurred on the afternoon of July 23, 2009, at the High School, located at 750 Unionville Road in Kennett Square, Pennsylvania. The fire caused significant damage to a hallway known as the "Yellow Hallway" or the "Yellow Mat Hallway" which was located adjacent to the school's gymnasium. The school was in the middle of summer vacation, and there were few people present at the time of the fire. No individuals were injured in the fire, but the hallway sustained substantial damage. (Owens Dep. 35, Pl.'s Resp. Ex. C.)

---

[1] Plaintiff has agreed to dismiss the negligence claim in Count I of the Complaint.

Seven minutes after the first alarm, firefighters from the Po-Mar-Lin Fire Company arrived at the scene. (Fire Incident Report 1, ECF No. 17-6.) The fire was brought under control quickly. (*Id*.) Trooper David Cornetta of the Pennsylvania State Police, Fire Marshal Charles Owens, and Fire Marshal Russell Kilmer were present at the scene.

Prior to the fire, various items had been moved into the hallway while the school's custodial crew was waxing the gymnasium floor, cleaning adjacent rooms, and completing several other renovation projects in areas near the gymnasium. (Iezzi Dep. 31-32, ECF No. 17-2.) The renovation did not include any electrical work. (McLimans Dep 11., ECF No. 17-4.) Among the items moved into the hallway was a Frigidaire brand compact refrigerator-freezer, manufactured by Defendant.[2] (Kline Dep. 21, ECF No. 17-5.) The refrigerator had been purchased by the school's head athletic trainer, Steven Iezzi, in early 2008, and was being used to store ice packs and sports drinks for the school's volleyball team. (Iezzi Dep. 13, 28.) Although the refrigerator was usually located in Iezzi's office, which was near the Yellow Hallway and the gymnasium, it had been moved to the hallway during the renovation  (Kline Dep. 17.) The refrigerator had been unplugged for the summer recess; however, when it was moved out of Iezzi's office into the Yellow Hallway it was plugged in again. (Iezzi Dep. 16; Kline Dep. 21.) Also located in the hallway were an electrically powered water fountain, several plastic mats, a plastic cart, and a small metal can. (Redsicker Dep. 34-35, ECF No. 17-8.) The remains of these items were found in the Yellow Hallway after the fire. (*Id*.)

---

[2] Other than the Frigidaire nameplate on the front of the refrigerator, "no other identification appeared to have survived the fire." (Redsicker Dep. 15.) According to the reports from the experts for both Plaintiff and Defendant, the "[r]esearch indicated the Frigidaire refrigerator was likely Model No. FRTC03L5DB." (SEA Report 10; ESI Report 4.)

3

The trained fire investigators determined that the fire "originated in the area of the portable refrigerator." (Cornetta Dep. 44, Pl.'s Resp. Ex. B.) The Fire Incident Report, which was filed immediately following the initial investigation, declared the cause of ignition to be a failure of equipment, and noted that the source of heat was "electric arcing." (Fire Incident Report 4.) Po-Mar-Lin Fire Company Chief Donald E. Wells, in a written summary attached to the Fire Incident Report, determined that the cause of the fire was electrical, and mentioned that ignition occurred near the refrigerator. (*Id*. at 5.) The Fire Incident Report dismissed the possibility that human factors contributed to ignition, effectively eliminating arson and careless smoking as a possibility. (*Id*. at 4.)

In his deposition, Fire Marshal Kilmer noted that the fire had no "obvious cause." (Kilmer Dep. 61.) Kilmer stated that although the fire marshals did not believe that the cause of the fire was spontaneous combustion, they could not rule it out as a possibility. (*Id*. at 62.) Kilmer further noted that neither flammable materials nor cleaning supplies were found in the hallway, reducing the odds of spontaneous combustion. (*Id*. at 63.) No flammable substances were being stored or used in the hallway at the time of the event. (Kline Dep. 23; Hostetler Dep. 24, ECF No. 17-3; McLimans Dep. 26-27.)

On July 28, 2009, SEA Ltd. ("SEA") was hired by School Claims Services, Inc., on Plaintiff's behalf, to "render . . . professional opinions regarding the origin and cause of the fire." (SEA Report 1.) The investigation was assigned to Aaron Redsicker, a Certified Fire Investigator (CFI). Redsicker collaborated with SEA Project Engineer Robert Neary, an electrical engineer, in preparing a report on the causes of the fire. In their report, Redsicker and Neary concluded that "the fire originated inside a compact Frigidaire refrigerator," and that the

4

"source of the ignition was an electrical short-circuiting event on the copper conductor that connected the temperature control device to the compressor relay." (*Id*.) According to the SEA report, an electrical arcing event triggered by a defect in the conductor ignited nearby combustible materials. (*Id*.; Redsicker Dep. 73.) The SEA investigators considered, and eliminated, other potential sources of ignition, such as the water fountain's power cord and the refrigerator's power cord. (Redsicker Dep. 48-49; Neary Dep. 38.)

SEA investigators documented the presence of a metal can in the Yellow Hallway. (Redsicker Dep. 36-37.) According to Redsicker, the can had caved in, with cloth remains inside. (*Id*. at 35.) The cloth was likely gauze or cotton. (*Id*. at 76-77.) Redsicker noted that some of the cloth was unburned, and that while the outside of the can had suffered significant fire damage, the interior of the can had not sustained the same level of oxidization. (*Id*. at 36-37.) Redsicker concluded that if the fire had originated inside the can, the contents of the can would have been consumed. (*Id*. at 61, 81.)

Redsicker expressed concern that evidence might not be preserved if he left the scene of the fire, because the approaching school year required that restoration and repair of the premises begin immediately. (*Id*. at 28.) Redsicker decided to remove several items from the premises. (*Id*. at 53-56.) Specifically, Redsicker removed three items which were later examined in the presence of Defendant's counsel on March 17, 2011. (SEA Report 10.) The three items included the water fountain, which had been mounted on the wall along with its power cord, the refrigerator, along with its power cord, and some burnt paper and cloth remains. The burnt paper came from outside the metal can and the cloth remains came from inside the metal can. The

paper and cloth were commingled. (SEA Report 10.) Redsicker did not remove the metal can because it had been nearly destroyed in the fire, was stuck to the floor, and because he did not believe the can itself would be of any material value. (Redsicker Dep. 36, 56.) In the days and weeks following the fire, the hallway was cleaned and restored with the assistance of the BELFOR Corporation, a company that specializes in disaster recovery. (Kline Dep. 51.) The whereabouts of the metal can is unknown.

Ultimately, some months after Redsicker had conducted his investigation, Plaintiff notified Defendant of the fire, and that the refrigerator manufactured by Defendant was the cause of the fire. Thereafter, Defendant contacted Engineering Systems, Inc. (ESI) and asked the company to investigate "the possible involvement of a refrigerator" in causing the fire. (ESI Report 3.) Thomas Bajzek, an electrical engineer and ESI's expert, considered all of the evidence available and reached the following conclusions:

1. The origin of the fire was not in the compressor compartment of the subject refrigerator.

2. There is no evidence of any failure or defect in the subject refrigerator as the cause of the fire.

3. The fire scene was not made available for inspection by a representative of Electrolux Home Products. Evidence from the fire scene was not preserved, eliminating data pertaining to the cause of the fire.

4. Spontaneous ignition of rags in the can (highlighted in Photograph 3) cannot be ruled out as the cause of the fire.

5. The cause of the fire remains undetermined.

Bajzek was very critical of the way Redsicker handled his investigation. He was critical of the fact that Defendant was not notified of this fire for months and was not given the opportunity to have a meaningful inspection of the fire scene. He was also critical of Redsicker's handling of the evidence, specifically the failure to preserve the metal can, the commingling of the contents of the can and debris from outside the can, and the failure to do an analysis of the contents of the can. Bajzek asserts that the actions of Plaintiff's experts violated the standards that govern the conduct of such investigation, specifically ASTM Standards E860 and E1188 and NFPA Standard 921.

Defendant seeks summary judgment based upon Plaintiff's failure to establish the elements necessary for malfunction liability. Defendant also seeks summary judgment in its favor because of Plaintiff's spoliation of evidence, or, alternatively, that an adverse inference be included in the jury charge.

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

With regard to the issue of sanctions for spoliation of evidence, "spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004). In determining whether to grant sanctions for spoliation,[3] the district court must consider several factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994). The existence of bad faith or an "evil motive" is not a prerequisite to the imposition of spoliation sanctions. *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994). Unintentional destruction of evidence, "if the result of unreasonable conduct, subjects a party to sanctions." *Travelers Prop. Cas. Co. of Am. v. Cooper Crouse-Hinds, LLC*, No. 05–6399, 2007 WL 2571450, at *5 n.28 (E.D. Pa. Aug. 31, 2007). However, courts decline to sanction purely accidental conduct, where the evidence "in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil*

---

[3] "[A] showing of spoliation may give rise to a variety of sanctions," including "[1] dismissal of a claim or granting judgment in favor of a prejudiced party; [2] suppression of evidence; [3] an adverse inference, referred to as the spoliation inference; [4] fines; [and] [5] attorneys' fees and costs." *AMG Nat'l Trust Bank v. Ries*, No. 06-4337, 2011 U.S. Dist. LEXIS 79361, at *15 (E.D. Pa. July 21, 2011). Such a decision is left to our discretion. *Id*.

*Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

With regard to the question of summary judgment on Plaintiff's strict liability claim based upon product malfunction, and Plaintiff's breach of warranty claims, to succeed on a strict product liability claim under Pennsylvania law, a plaintiff must show that: (1) the product was defective; (2) the defect caused the plaintiff's injury; and (3) the defect existed at the time it left the manufacturer's control. *Barnish v. KWI Building Co.*, 980 A.2d 535, 541 (Pa. 2009).[4] Pennsylvania law permits Plaintiff to satisfy the first element by relying on a malfunction theory of strict product liability. Pursuant to this theory, a plaintiff who cannot put forth direct proof of a defect can nevertheless establish the existence of a defect using circumstantial evidence. *Id.*; *see also Mracek v. Bryn Mawr Hospital*, 363 F. App'x. 925, 926 (3d Cir. 2010) (not precedential). A plaintiff seeking to prove the existence of a defect using the malfunction theory must present "evidence of the occurrence of a malfunction and . . . evidence eliminating abnormal use or reasonable, secondary causes for the malfunction." *Barnish*, 980 A.2d at 541. If the plaintiff can adduce adequate evidence of this sort, he can then establish "through inference . . . the second and third elements" of a strict product liability claim. *Id.* at 542.

The malfunction theory does not, however, "relieve a plaintiff of his or her burden to present evidence creating a genuine dispute of material fact on each element in order to survive summary judgment." *Mracek*, 363 F. App'x. at 927. It merely permits a plaintiff to "demonstrate these elements through circumstantial, instead of direct, evidence." *Id.* Plaintiff

---

[4] Plaintiff and Defendant agree that the issues of material fact related to Count III are the same as the issues of material fact related to Count II. (Def's Mem. 16, ECF No. 17; Pl.'s Resp. 7, ECF No. 18.)

cannot simply rely on "conjecture or guesswork" in articulating this argument. *Barnish*, 980 A.2d at 542; *Dansak v. Cameron Coca-Cola Bottling Co.*, 703 A.2d 489, 496 (Pa. Super. Ct. 1997).

## III. DISCUSSION

Defendant asks that we grant summary judgment on the grounds that Plaintiff improperly spoliated vital evidence. (Def.'s Mem. 16.) Alternatively, Defendant asks that a spoliation charge be read to the jury at trial. (*Id*. at 20.) Defendant requests such sanctions based upon Plaintiff's failure to notify Defendant of the fire, thus preventing Defendant from conducting a meaningful investigation of the fire, and because of Plaintiff's failure to preserve a metal can, and its contents, that was found in the hallway in the fire's immediate aftermath. (*Id*. at 16.) Plaintiff counters that its experts were not at fault in failing to preserve relevant evidence, that the fact that the fire occurred at the end of July with the opening of school in a matter of weeks necessitated immediate clean up and restoration, and that since Defendant's experts were given the opportunity to evaluate the relevant evidence that was preserved, Defendant suffered no prejudice. (Pl.'s Resp. 16.)

Analyzing the instant circumstances in light of *Schmid* and considering the fact that appropriate sanctions will "depend on the facts and circumstances of the case," *Schmid*, 113 F.3d at 81, our first inquiry is the degree of fault that Plaintiff bears for the disappearance of the metal can. In the immediate aftermath of the fire, employees of the School District did not remove any items from the Hallway. (McLimans Dep. 29; Hostetler Dep. 38.) The School District hired BELFOR to repair and restore the Yellow Hallway and other affected areas in advance of the upcoming school year. (*See* Kline Dep. 51.) However, Plaintiff's experts

conducted their investigation of the fire scene on July 29, 2009, just six days after the fire and before BELFOR entered the picture.

Plaintiff's experts removed the refrigerator and several other items from the Hallway during their July 29 investigative visit but chose not to remove the metal can. They could have removed the metal can and its contents and preserved it for inspection by Defendant's experts, as they did with other items found in the Yellow Hallway. As experienced fire investigators, in the employ of an insurance company, Plaintiff's experts must have known that the metal can could be an issue in future litigation. It was located in the area of the origin of the fire. Several fire marshals had determined that spontaneous combustion could not be ruled out. Redsicker should have known that this potentially vital evidence should be preserved. Even though Redsicker may have personally believed that the can had no material value, he should have anticipated that another investigator might want to evaluate it. Indeed, we are struck by Redsicker's statement, during his deposition, that he collected the paper and cloth remains "in case someone wanted to make the contention later" that those items might have been connected to the fire's origins. (Redsicker Dep. 53.)

Furthermore, Redsicker was well-aware of his obligations under relevant fire investigation standards. "NFPA 921 is a guide to fire investigations developed by the National Fire Protection Association to 'assist in improving the fire investigation process and the quality of information on fires resulting from the investigative process.'" *Chester Valley Coach Works v. Fisher-Price, Inc.*, No. 99-4197, 2001 U.S. Dist. LEXIS 15902, at *11 (E.D. Pa. Aug. 29, 2001) (internal citation omitted).[5] These standards govern Redsicker's professional

---

[5] NFPA provides extensive guidance on avoiding spoliation of evidence and mitigating its effects. "Care should be taken to avoid spoliation." NFPA 921 § 11.3.2.2 (2011 ed.).

responsibility and ethical obligations. Plaintiff claims that Redsicker and Neary "followed the scientific methodology espoused by NFPA 921, Guide for Fire and Explosion Investigation." (Pl.'s Resp. 7.)

Given the fact that Plaintiff's experts were familiar with the NFPA guidelines, one wonders why Redsicker and Neary did not fully comply with them. NFPA 921 instructs investigators that "[v]aluable physical evidence should be recognized, properly collected, and preserved for further testing and evaluation or courtroom presentation." NFPA 921 § 4.4.4 (2011 ed.).

Plaintiff's experts had the authority to remove items from the scene of the fire, but chose not to collect all physical evidence that might have been of value. Defendant had not yet been informed of the fire, and had no opportunity to examine the scene or ask for certain items to be removed. It is clear that there was a spoilation of evidence by Plaintiff's experts that was potentially valuable in determining the cause of the fire. Plaintiff bears full responsibility for this spoilation.

Addressing next the degree of prejudice Defendant suffered as a result of its inability to physically examine the metal can, Defendant was deprived of the ability to construct a full defense. Even though Plaintiff's expert concluded that the refrigerator was the origin of the fire,

---

"Spoilation of evidence may occur when the movement, change, or destruction of evidence, or the alteration of the scene significantly impairs the opportunity of other interested parties to obtain the same evidentiary value from the evidence, as did any prior investigator." Id. at § 11.3.5. Furthermore, the Guidelines note that "[c]laims of spoilation of evidence can be minimized when notice is given to all known interested parties that an investigation at the site of the incident is going to occur so as to allow all known interested parties the opportunity to retain experts and attend the investigation." Id. at § 11.3.5.4. There are many additional instances in which NFPA 921 discusses spoilation and destruction of evidence, which we omit for purposes of brevity.

Defendant's expert has ruled out the refrigerator's involvement. Moreover, spontaneous combustion has not been definitively ruled out as a cause of the fire. Unfortunately, because of Plaintiff's actions no one will ever know the exact degree of prejudice Defendant has suffered.

Defendant's expert stated that he could not rule out spontaneous combustion partially because he could not determine if the can's lid was securely attached.[6] (Bajzek Dep. 184-85.) Since Defendant's expert had no opportunity to view the scene of the fire, the preservation of evidence was necessary if Defendant was to have a fair opportunity to reconstruct the situation and prepare a full defense. The fire marshals and the state trooper that were present at the fire scene all focused on the refrigerator as being a potential cause of the fire. Plaintiff's experts did the same. Clearly, Plaintiff should have immediately notified Defendant of the fire and Plaintiff's experts should have preserved all evidence seen in the area that they determined was the origin of the fire.

Defendant was not informed of the circumstances surrounding the fire until after the Yellow Hallway had been restored. Defendant was unable to marshal its own investigators to survey the scene of the fire. Defendant was not afforded the opportunity to suggest which evidence it would want to preserve. Obviously, Defendant has been prejudiced as a result of Plaintiff's conduct.

Plaintiff has suggested that Defendant could have conducted chemical analysis on the paper remains and rags collected from the area near the can and from inside the metal can.[7] Defendant responds that Plaintiff's commingling of the contents of the can with items found

---

[6] Such information could not be gleaned purely from the post-fire pictures of the can.
[7] We note that Plaintiff could have conducted such an analysis as well, and apparently chose not to do so.

outside the can destroyed any evidentiary value that the contents of the can may have had. We cannot comment on whether the failure to conduct a chemical analysis was material. However, we are satisfied that Plaintiff and its agents were not nearly as vigilant in collecting and preserving the evidence from this fire scene as they should have been. Plaintiff's fire experts made mistakes that deprived Defendant and its scientists of access to evidence that potentially could have changed the contours of this case.

While we do believe that Defendant suffered some prejudice as a result of Plaintiff's conduct, Plaintiff did preserve the refrigerator, which forms the crux of the dispute between the parties, and Defendant's expert was able to analyze the refrigerator and conclude that the fire did not start in the refrigerator. Defendant's expert is available to testify that this fire was not caused by a defect in the refrigerator. Moreover, Plaintiff preserved some of the contents of the can, and various witnesses have provided testimony about potential chemical substances which might have contributed to an event of spontaneous combustion. While Defendant may have been able to construct a stronger case had its expert been able to personally inspect the metal can, we do not believe that the prejudice from its inability to do so requires the imposition of the most severe sanction.

*Schmid* commands that we evaluate "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Schmid*, 13 F.3d at 78. We are satisfied that a grant of summary judgment in favor of Defendant would be unfair to Plaintiff, and would not be "the least onerous sanction." *Id*. at 79.

"The unexplained failure or refusal of a party to judicial proceedings to produce evidence that would tend to throw light on the issues authorizes, under certain circumstances, an inference

or presumption unfavorable to such party." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983). Courts will employ spoliation inferences if there is reason to believe that a party failed to preserve or destroyed relevant evidence. Such an inference permits the trier of fact to conclude that the "destroyed evidence would have been unfavorable to the position of the offending party." *Schmid*, 13 F.3d at 78. Courts can require a spoliation inference if: (1) the evidence was within the alleged spoliator's control; (2) there has been actual suppression or withholding of the evidence; (3) the evidence was relevant; and (4) it was reasonably foreseeable that the evidence would be discoverable. *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 112 (E.D. Pa. 2005).

The evidence here was within Plaintiff's control. It is true that the School District, not Plaintiff, was responsible for the school grounds. Nevertheless, Plaintiff's fire experts were at the scene in the days following the fire, and removed evidence that they perceived as valuable. They did so, in Redsicker's words, because they were not "convinced evidence could be preserved" after they left the scene. (Redsicker Dep. 28.) Plaintiff's experts had the authority and ability to control potential evidence and remove it from the scene of the fire. Even though the metal can may have been stuck to the floor, and difficult to remove, we note that Plaintiff's experts managed to remove the water fountain which was attached to a wall. A resourceful expert could have removed the metal can and stored it along with the water fountain and refrigerator for safekeeping.

The whereabouts of the metal can are unknown. Defendant has had no opportunity to conduct tests on the can, analyze its physical condition, or otherwise determine its significance in

determining the fire's origin or cause. Defendant's access to the evidence has been adversely affected.

The evidence in question is clearly relevant. Plaintiff's fire experts signaled as much in removing the contents of the can for chemical analysis and preservation. Redsicker noted that he documented the can during his investigation, and noted damage to the can. (Redsicker Dep. 35-37.) Defendant's fire expert argues that the "cause of [the] fire remains undetermined." (ESI Report 10.) Defendant's expert's inability to access the can is part of the reason for this doubt. (Bajzek Dep. 115-17, 184-85.)

Plaintiff's fire experts should have reasonably foreseen that the metal can would be discoverable evidence. Plaintiff's fire experts were aware that litigation could result from the fire, given their experience in the field of fire investigation. (*See* Redsicker Dep. 4, 15.) Redsicker claimed he removed the contents of the can precisely because he believed someone might later wish to contend that the can and its contents were involved in causing the fire. (*Id*. at 53-54.) If Plaintiff's experts foresaw the possibility of another expert investigating the can's contents, they should have foreseen the possibility of an expert demanding to examine the can.

Under the circumstances, Defendant's request for an adverse spoliation inference as to the metal can will be granted. Plaintiff will have the opportunity, at trial, to rebut Defendant's claims regarding the importance of the can and the possibility of spontaneous combustion originating in the can. We cannot, however, expect Defendant to advance the issue of spontaneous combustion without acknowledging that a potentially significant piece of supporting evidence has disappeared.

Turning now to the question of whether Plaintiff is entitled to summary judgment on its strict liability and breach of warranty claims based upon product malfunction, Plaintiff's experts could not determine the exact nature of the alleged defect. They could not determine whether the defect was a manufacturing defect or a design defect. Plaintiff cannot offer direct proof of the defect because the relevant portions of the refrigerator were consumed in the fire. (*See* SEA Report 12-13; Neary Dep. 30.)

In their report, Plaintiff's experts Redsicker and Neary concluded that "the fire originated inside a compact Frigidaire refrigerator," and that the "source of the ignition was an electrical short-circuiting event on the copper conductor that connected the temperature control device to the compressor relay." (*Id*.) According to Plaintiff's experts, as the result of a manufacturing or design defect, an electrical arcing event on the conductor ignited nearby combustible materials. (*Id*.) The experts considered, and eliminated, other potential sources of electrical ignition, such as the water fountain's power cord and the refrigerator's power cord. (*See* Redsicker Dep. 54, 75, 77, 78.) Plaintiff argues that there is no evidence in this case that the subject refrigerator was subjected to abnormal use or that there were other reasonable secondary causes of the malfunction. Circumstantial evidence that a fire was not caused by another source is adequate to show the existence of a disputed issue of material fact. *See, e.g.*, *Liberty Mutual Fire Ins. Co. v. Sharp Electronics Corp.*, No. 08-1678, 2011 U.S. Dist. LEXIS 71890, at *9-10 (M.D. Pa. June 1, 2011).

Defendant's expert will testify that the fire did not start in the compressor compartment of the refrigerator and that there is no evidence that a failure or defect in the refrigerator caused the fire. Defendant's expert will also testify that spontaneous combustion cannot be ruled out as a

cause of the fire. In addition, the jury will be instructed that Defendant is entitled to an adverse inference as a result of Plaintiff's spoliation of evidence. Clearly, there are issues of material fact here that must be decided by a jury.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is granted in part, and denied in part. Defendant's Motion for Summary Judgment is denied. Defendant's request for an adverse inference charge based upon the spoliation of evidence is granted. Count I of Plaintiff's Complaint based upon negligence is dismissed by agreement.

BY THE COURT:

_____
R. BARCLAY SURRICK, J.